**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

KIM BLANKS and SUSANNE BLANKS,

        Plaintiffs,

vs.   No.  CV 00-609 JP/DJS

ALLSTATE INSURANCE COMPANY,
GERI MOYA, SUSAN CARY, CPCU,
and ROBERT COLE,
        Defendants.

## MEMORANDUM OPINION AND ORDER

On May 18, 2000 Plaintiffs filed a Motion To Remand To State Court For Lack of Federal Jurisdiction (Doc. No. 13).  In their Response to the remand motion, filed June 14, 2000, Defendants also moved to dismiss Defendants Moya, Cary, and Cole (Doc. No. 14).  After carefully considering the pleadings, arguments of counsel, and applicable law, I find that the motion to remand is well-taken and should be GRANTED. The motion to dismiss must be decided in state court after remand.

Plaintiffs initiated this action by filing their Complaint in state court against Allstate Insurance Company ("Allstate"), and against individual employees of Allstate Geri Moya ("Moya"), Susan Cary ("Cary"), and Robert Cole ("Cole").  In their Notice of Removal, Defendants alleged that the amount in controversy exceeds $75,000.00, and that there is diversity of citizenship between Plaintiffs and Allstate.  Defendants do not dispute that both Plaintiffs and all three individual Defendants are residents of the State of New Mexico.  Rather, they base their allegation of diversity of citizenship on the contention that Moya, Cary, and Cole were fraudulently joined as Defendants solely for the purpose of attempting to defeat diversity jurisdiction.  Plaintiffs move to remand this case to state court for lack of diversity jurisdiction.

**Background - Factual Allegations**

On January 11, 1996 Plaintiff Kim Blanks was injured by an automobile driven by Frances Gonzales. Mr. Blanks was a pedestrian. Among other injuries, Kim Blanks sustained a serious head injury which allegedly caused him to lose all memory of the accident, impaired his cognitive abilities, and made him susceptible to influence by others. Plaintiff Suzanne Blanks is the wife of Kim Blanks. She was not involved in the accident. Plaintiffs and driver Gonzales were both insured by Allstate. Plaintiffs insured two cars under their Allstate policy. Allstate investigated the accident and determined that Gonzales was 70% negligent in causing the accident.

In their prolix 39-page complaint, Plaintiffs allege that Allstate and its agents have engaged in claims handling practices designed to enhance corporate profits and deny adequate coverage to insureds like Plaintiffs with first-party automobile insurance claims. These practices allegedly include deliberately low-balling, delaying, and denying the legitimate claims of its insureds in order to force them into abandoning their claims or accepting unreasonably low settlements of their claims. Plaintiffs allege that Defendant Moya, knowing that Kim Blanks was not represented by counsel after his accident until September 25, 1998, before then dealt directly with Kim Blanks and undertook to advise him as to his rights under the policy of insurance. They also allege that Allstate diminished Plaintiffs' claim by denying a substantial portion of some of their claims under their med pay coverage. Another tactic allegedly used by Allstate was making an "in house" settlement of Plaintiffs' liability claim against Frances Gonzales, the automobile driver, for Gonzales' policy limits of $25,000, without Plaintiffs' knowledge or consent, even though that sum did not represent full compensation for Plaintiffs' losses. Additionally, Allstate allegedly deducted $7000 of what it had paid under Plaintiffs' policy's med pay coverage from the

2

$25,000 paid to Plaintiffs under Gonzales' policy as a liability settlement, claiming the $7000 amount as subrogation, even though Allstate was not entitled to subrogation under the terms of Plaintiffs' policy because Plaintiffs were not fully compensated for their losses.

With respect to underinsured motorist coverage (UIM), Plaintiffs allege that Allstate and its agents Moya and later Cary made settlement offers that did not take into account Plaintiffs' stacking rights, and then made deductions for amounts paid by two of Kim Blanks' health care insurers, which the agents knew could not be subrogated. These tactics ultimately forced Plaintiffs to arbitrate their UIM claim. The arbitration award allegedly far exceeded the settlement offers, and Allstate has refused to pay it. Also, Allstate illegally has demanded that Plaintiffs bear the costs of arbitration.

**Motion To Remand -- Fraudulent Joinder**

Under 28 U.S.C. § 1332, there is federal court jurisdiction for cases in which there is complete diversity of citizenship between all plaintiffs and all defendants. When non-diverse parties have been joined as defendants, the removing defendants may avoid remand only by demonstrating that the non-diverse parties were fraudulently joined. Smoot v. Chicago, Rock Island & Pacific Railroad Co., 378 F.2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "The case law places a heavy burden on the party asserting fraudulent joinder." Montano v. Allstate Indemnity, No. 99-2225, 211 F.3d 1278, 2000 WL 525592 at *1 (10th Cir. Apr. 14, 2000) (unpublished disposition). The defendant must show that there is "no possibility" that the plaintiff would be able to establish a cause of action against a non-diverse defendant in state court. Id. In evaluating fraudulent joinder claims, all disputed questions of fact and all ambiguities in the controlling law are resolved in favor of the

3

plaintiff.  The court then determines whether there is "any possibility of recovery" against the non-diverse defendant.  Id. at *1-*2 (*quoting* Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000)).  *See also* Smoot, 378 F .2d at 882 (finding fraudulent joinder where non-liability of joined party was "established with complete certainty upon undisputed evidence").

> This standard is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced.  *See* Batoff v. State Farm Ins. Co., 977 F.2d 848, 851-53 (3d Cir. 1992) ('A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction.').

Montano at *2.  Remand is required if any claim against any non-diverse defendant is "possibly viable".  Id.

Plaintiffs contend that they have alleged numerous claims against the non-diverse individual Defendants that are well-established under New Mexico law, or that are at least possibly viable.  Defendant Geri Moya was the Allstate claims adjuster who initially dealt with Plaintiffs' claims.  Defendant Susan Cary, CPCU, is a Certified Property and Casualty Underwriter employed by Allstate who was later assigned to adjust Plaintiffs' uninsured motorist ("UM") and underinsured motorist ("UIM") claims.  Defendant Robert Cole is a New Mexico attorney and an Allstate employee who allegedly investigated and evaluated Plaintiffs' UIM claims on behalf of Allstate beginning in mid-October 1999.  The claims against the individual Defendants include fraud (Count I), violations of the New Mexico Unfair Claims Practices Act (Count VII), aiding and abetting violation of fiduciary duty (Count IX), and unauthorized practice of law (Count X).

*Fraud.*  In Count I, Plaintiffs allege that each of the individual Defendants knowingly made

false representations about Plaintiffs' rights, benefits, and coverage under their Allstate insurance policy, intending to defraud them and to avoid Allstate's contractual obligations concerning med pay and UIM coverage.  The Complaint contains numerous factual allegations about the alleged fraud and the participation of the individual agents in the alleged scheme.  In support of remand, Plaintiffs cite the general rule that under New Mexico law officers and employees of corporations may be held personally liable when they commit intentional torts such as fraud.  *See, e.g.,* Lobato v. Pay Less Drug Stores, Inc., 261 F.2d 406, 408-09 (10th Cir. 1958) (New Mexico case) (officer or agent of corporation who directs or participates actively in tort is personally liable); Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 437, 872 P.2d 852, 855 (1994) (corporate employees "can be held personally liable when they commit intentional torts"); Stinson v. Berry 123 N.M. 482, 486, 943 P.2d 129, 133 (Ct. App. 1997) (officer who directs or actively participates in tortious act of corporation will be liable along with corporation).

     The corollary to the proposition that an agent of a corporation who participates actively in a tort may be held personally liable is that an agent's liability must be predicated on some individual wrongdoing and not simply on the agent's connection to the corporation.  Using this analog, Defendants reason that because the alleged fraudulent acts by the individuals were uncontestedly in furtherance of Allstate's policies and directives, those acts cannot represent individual wrongdoing.  The individual agents are alleged to have acted in a conspiracy with Allstate, not of their own initiative.  Also, the allegedly wrongful acts of Defendant Moya were done "according to the defined Allstate protocol."  Compl. ¶ 15 at 4.  Defendant Moya was allegedly "specifically trained by Allstate" to do what the Plaintiffs now contend was fraudulent. Id.  Thus, according to Defendants, the wrongdoing alleged by Plaintiffs is corporate, not

5

individual wrongdoing.  They contend that the acts described are not acts of the individual Defendants, but rather are the actions of the corporation and were done in furtherance of the corporate policies and programs.[1]

Defendants' argument boils down to the assertion that individual agents who participated in a tort cannot be liable where there is no allegation that they acted outside the scope of their employment with the corporation.  They cite Christmon v. Allstate Ins. Co., 57 F. Supp.2d 380 (S.D. Miss. 1999).  In that case, the plaintiff alleged that an insurance adjuster "was acting within the scope of his agency and employment."  Id. at 382.  The court in Christmon did not hold that an agent acting within the scope of his employment cannot be personally liable for a tort.  Rather, it found fraudulent joinder because there was "a single conclusory allegation in the Complaint" and "no factual basis for concluding" that an adjuster employed by the insurance company "participated in" the allegedly tortious activity on behalf of the company.  Id. at 381-82.[2]  In this case, Plaintiffs have adequately alleged direct participation in the tort of fraud by the individual agents.

More favorable to Defendants' argument is language in Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 872 P.2d 852 (1994), where the New Mexico Supreme Court stated:

---

[1] Defendants bolster their argument that Plaintiffs' claim is only against Allstate by the fact that Plaintiffs seek injunctive relief only against the corporation "enjoining and permanently prohibiting Allstate from using" certain practices and corporate policies in New Mexico.  *See* Compl. ¶ 5 at 38.  This is misleading, however, because Plaintiffs also seek damages against all Defendants.  Plaintiffs' first prayer for relief is for judgment "[f]or actual damages incurred by Plaintiff as a result of the acts of Defendants herein, jointly and severally."  Compl. ¶ 1 at 38.

[2] I believe the Christmon court used the wrong standard in denying the motion to remand.  It is the burden of the removing party to show uncontestedly that there are no facts to support an allegation of direct participation, not the burden of the plaintiff to allege details of or to prove factually that there was direct participation by the agent in the tort.

> If Bourgeous was employed by Horizon, only Horizon could discharge Bourgeous, not Rodriguez and Wolf.  A corporation can act only through its officers and employees, and any act or omission of an officer or an employee of a corporation, within the scope or course of his or her employment, is an act or omission of the corporation. *See* SCRA 1986, 13-409 (Repl. Pamp. 1991).

Id. at 437, 872 P.2d at 855.  I do not read Bourgeous for the broad proposition that an employee of a corporation acting within the scope of his employment cannot be personally liable for fraudulent tortious activity such as that alleged in this case.  Bourgeous has been distinguished because it applied to the tort of retaliatory discharge in an internal employment situation, not to a tort involving someone outside the corporation.  *See* Stinson v. Berry, 123 N.M. at 487, 943 P.2d at 134 (holding that corporate director acting within scope of duties can be individually liable for tort of negligence, and distinguishing Bourgeous "on the basis that the tort of retaliatory discharge is based on an employer-employee relationship").  The Bourgeous Court itself recognized that individual employees may be liable for some intentional torts, such as those involving malicious, willful or wanton conduct.  Bourgeous, 117 N.M. at 437, 872 P.2d at 855.

I cannot conclude that New Mexico law would reject personal liability where an employee actively participated in fraud while acting on behalf of a corporation.  In fact just the opposite may be true.  *See, e.g.,* Kreischer v. Armijo, 118 N.M. 671, 884 P.2d 827 (Ct. App. 1994), in which the court stated:

> We recognize that an agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal.  *See Restatement (Second) of Agency* § 348 (1958) (agent can be sued in tort for fraud and misrepresentation); *Restatement (Second) of Agency* § 350 (1958) (agent subject to liability for negligence).

Id. at 673, 884 P.2d at 829.  *See also* Garcia v. Coffman, 124 N.M. 12, 22, 946 P.2d 216, 226 (Ct. App. 1997) (Hartz, specially concurring) (citing *Restatement (Second) of Agency* § 348 for

7

proposition that agent who fraudulently makes representations or knowingly assists in commission of tortious fraud by principal is subject to liability in tort even though fraud occurs in transaction for benefit of principal); Boyer v. Snap-On Tools Corp., 913 F.2d 108, 112 (3d Cir. 1990) (employee may be liable under Pennsylvania law for fraud which contributes to plaintiff's damages, even if actions taken in course of employment).

This ambiguity in the controlling law must be resolved in favor of Plaintiffs. I conclude that Plaintiffs have a possibility of recovery against the individual Defendants on their fraud claim, and this question should be answered by the state courts.

*Unfair Claims Practices Act.* In Count VII for violations of the New Mexico UCPA, N.M. Stat. Ann. 1978 §§ 59A-16-1 *et seq.* (Repl. Pam. 2000), Plaintiffs allege that the individual Defendants personally committed or participated in willful violations of the Act which caused Plaintiffs damage.

Defendants contend that the Act does not recognize individual liability but places liability only on the corporation. This argument is the same they made in connection with the fraud count, and is not supported by any legal authority. In fact the Act by its terms applies to "persons" including "agents" and "adjusters." Id. at § 59A-16-1. It proscribes any "person" from engaging in prohibited acts. Id. at § 59A-16-3. It prohibits "an insurer or other person" from committing various enumerated acts defined as unfair and deceptive. Id. at § 59A-16-20. It provides a private right of action for persons injured by violations of the Act by "an insurer or agent." Id. at § 59A-16-30. Insurance adjusters may be liable under the insurance codes of other states. *See, e.g.,* Bodenhamer v. Superior Court, 178 Cal. App. 3d 180, 223 Cal. Rptr. 486 (Ct. App. 1986) (independent insurance adjusters could be held liable under California's unfair practices act of

insurance code for unfair or deceptive acts or practices).  The question of whether individual agents can be liable under the Act has not been answered specifically by the New Mexico state courts.  At most then, there is an ambiguity in the controlling law which must be resolved in favor of Plaintiffs.

Defendants next contend that there is no allegation that the individual Defendants engaged in a course of conduct, only that they participated in a particular incident.  Thus, they reason, Plaintiffs fail to state a claim against the individual Defendants because § 59A-16-20 of the Act[3] requires that the activity complained of be "committed or performed with such frequency as to indicate a general business practice."  Defendants cite Melancon v. USAA Cas. Ins. Co., 174 Ariz. 344, 849 P.2d 1374 (Ct. App. 1992) for the proposition that Arizona refuses to apply its Unfair Claims Settlement Practices Act to a single case, but requires instead a course of conduct.  That case, however, stands for the proposition that the Arizona act does not create a standard of conduct for insurers because it specifically disallows a private right or cause of action.  Cases from other states, however, affirm the axiom that a course of conduct must be proved to recover under a statute with "general business practice" language similar to New Mexico's UCPA.  *See, e.g.*, Stonewall Jackson Mem. Hosp. Co. v. American United Life Ins. Co., 525 S.E.2d 649, 656 (W.Va. 1999) (under West Virginia's unfair practices act, plaintiff must prove multiple violations by insurance company amounting to general business practice); Quimby v. Kimberly Clark Corp., 613 A.2d 838, 844-45 (Conn. App. 1992) (plaintiff must allege insurer committed wrongful acts with such frequency as to indicate general business practice).

---

[3] Section 59A-16-20 provides: "Any and all of the following practices with respect to claims, by an insurer or other person, knowingly committed or performed with such frequency as to indicate a general business practice, are defined as unfair and deceptive practices and are prohibited: . . .."

An examination of the Complaint discloses that Plaintiffs allege that the "actions of Allstate, Moya, Cary and/or Cole ... were performed with such general and deliberate frequency as to constitute a general business practice." ¶ 137 at 32. Also, there are numerous allegations about Allstate's new claims handling protocol utilized by the individual Defendants in this case. The individual Defendants allegedly were trained in and carried out the new protocol. This implies that the individuals performed the same acts not only towards Plaintiffs, but generally towards all insured claimants under the new protocol. This is sufficient to allege a cause of action under the Act for a general business practice.

Moreover, Plaintiffs contend that allegations of a prohibited "course of conduct" are not required to state a claim against the individual Defendants under the UCPA. They argue that the Act prohibits certain enumerated acts "knowingly committed *or* performed with such frequency as to indicate a general business practice," § 59A-16-20 (emphasis added). This language, expressed as it is in the disjunctive, may mean that acts "knowingly committed" give rise to liability even if not "performed with such frequency as to indicate a general business practice." No New Mexico court has yet interpreted the meaning of this section of the Act.

Plaintiffs also note that § 59A-16-30 of the Act specifically preserves common law remedies.[4] The violation of a statute which is enacted for the benefit or protection of a person claiming injury constitutes negligence per se under New Mexico law. *See* Archibeque v. Homrich, 88 N.M. 527, 532, 543 P.2d 820, 825 (1975). Plaintiffs allege that they fall within the class of persons for whose benefit and protection the Act was enacted. Compl. ¶ 135 at 32.

---

[4] Section 59A-16-30 provides for a private right of action for violation of the Act, and states: "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state . . .."

Thus, even if Plaintiffs could not recover directly under the Act against the individual Defendants because of the lack of proof of a course of conduct, they may be able to recover against them on a negligence theory, using the Act's provisions to establish negligence per se.

I conclude that Plaintiffs have a possibility of recovery against the individual Defendants on their UCPA claim. The ambiguities in this statute are best interpreted by the New Mexico state courts.

*Other claims.* Having found that at least two of Plaintiff's causes of actions are possibly viable against the individual Defendants, I find it unnecessary to analyze the other claims brought against them in the complaint, including Count IX for aiding and abetting violation of fiduciary duty, and Count X for unauthorized practice of law. *See* Green v. Amerada Hess Corp., 707 F.2d 201, 207 (5th Cir. 1983) (remand necessary even if plaintiff precluded from pursuing all claims save one in state court).

Because Plaintiffs are not necessarily precluded from pursuing in state court all their claims against the non-diverse individual Defendants, this case must be remanded to state court. Therefore I will grant Plaintiffs' motion to remand.

**Costs and Attorney Fees**

Plaintiffs request that they be awarded their costs and attorney fees for bringing this remand motion. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Whether to award attorneys fees and costs under § 1447(c) when a case is remanded to state court is within the sound discretion of the district court. *See* Suder v. Blue Circle, Inc., 116 F.3d 1351, 1353 (10th Cir. 1997); Daleske v. Fairfield Communities, Inc., 17 F.3d 321, 323

11

(10th Cir. 1994).  The key issue is the propriety of the removal.  <u>Suder</u>, 116 F.3d at 1353; <u>Excell, Inc. v. Sterling Boiler & Mechanical, Inc.</u>, 106 F.3d 318, 322 (10th Cir. 1997).

In this case, the propriety of the removal was questionable at best.  The arguments made by Defendants in their response to the remand motion were unconvincing and often not responsive to the issues argued by Plaintiffs.  After thoroughly considering the pleadings, the law, and the arguments of counsel, I conclude that an award of costs and fees in this matter is appropriate.

IT IS THEREFORE ORDERED that Plaintiffs' Motion To Remand is hereby GRANTED.  This case is hereby remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico.

IT IS FURTHER ORDERED that Defendants shall pay Plaintiffs' reasonable costs and expenses, including attorney fees, incurred as a result of the removal.

_____
CHIEF UNITED STATES DISTRICT JUDGE

Counsel for Plaintiffs:  David J. Berardinelli, BERARDINELLI & ASSOC., Santa Fe, N.M.; and Jeffrey C. Brown, Albuquerque, N.M.

Counsel for Defendant Cole:  Megan Day Hill, SIMONE, ROBERTS & WEISS, Albuquerque, N.M.

Counsel for Defendants Allstate, Moya, and Cary:  Peter S. Kierst, EAVES, BARDACKE, BAUGH, KIERST & KIERNAN, Albuquerque, N.M.